**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ophelia Anthony, et al., | No. CV-20-08002-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court are Defendant United States' Motion to Dismiss (Doc. 19) and Plaintiffs' Motion to Amend Complaint (Doc. 33). The parties have fully briefed the Court on each matter.[1]

## I.      Background

When Congress passed the Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA"), Pub. L. No. 93-638, it intended to bring about "meaningful Indian self-determination" by encouraging "meaningful participation by the Indian people in the planning, conduct, and administration" of federal programs and services. 25 U.S.C. § 5302(b). The ISDEAA created a way for tribal organizations to enter into self-determination contracts with the United States so that they themselves might administer federal health programs. *See* 25 U.S.C. § 5326. The Fort Defiance Indian Hospital Board, Inc. ("FDIHB"), located on the Navajo Nation, is the product of an ISDEAA contract made

---

[1] Plaintiffs filed a Response to the Motion to Dismiss (Doc. 26), and Defendant filed its Reply (Doc. 27). Defendant filed a Response to the Motion to Amend Complaint (Doc. 34), and Plaintiffs filed their Reply (Doc. 35).

1    with the United States Department of Health and Human Services. (Doc. 1 at ¶¶ 17–18).

2    Plaintiffs are all employees of FDIHB. (*Id.* at ¶ 3). As alleged in the Complaint,

3    their claims stem from the misconduct of a former co-employee, Garrison Sloan ("Sloan"),

4    who hid cameras in FDIHB restrooms. (*Id.* at ¶ 25). After a 2018 grand jury indictment,

5    Sloan pleaded guilty to voyeurism and was sentenced to six years in prison and mandatory

6    lifetime registration as a sex offender. (*Id.* at ¶¶ 124–28); (Doc. 1-1 at 3). This was not the

7    first time Sloan had been caught making surreptitious recordings. In 2004, Sloan pleaded

8    guilty to videotaping women in an Arizona State University locker room. (Doc. 1 at ¶¶

9    130–133). Plaintiffs claim that FDIHB failed to follow its own policy when it hired Sloan,

10   either by failing to conduct a background check or by hiring him despite his background.

11   (*Id.* at ¶¶ 144–50).

12   In their Complaint, Plaintiffs bring four claims against Defendant United States

13   under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.* (Doc. 1 at ¶ 1).

14   The claims include negligence; negligent hiring, retention, and supervision; invasion of

15   privacy; and intentional infliction of emotional distress. (*Id.* at ¶¶ 170–94). In their Motion

16   to Amend Complaint, Plaintiffs seek to add four more parties as plaintiffs. (Doc. 33 at 1–

17   2).

18   Defendant claims immunity. Specifically, Defendant's Motion to Dismiss argues

19   the FTCA does not waive sovereign immunity in this case. (Doc. 19 at 1). The Motion

20   seeks to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of

21   Civil Procedure for lack of subject-matter jurisdiction and failure to adequately state a

22   claim. (*Id.*) Defendant also argues that Plaintiffs' Motion to add parties is futile and should

23   be dismissed because it will not cure the original Complaint's jurisdictional deficiencies.

24   (Doc. 34 at 2).

25   The Court must have jurisdiction to hear this case, and so it will first address the

26   issue of sovereign immunity. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The

27   Court will then determine whether Plaintiffs' Complaint adequately states a claim and

28   whether to grant Plaintiffs' Motion to Amend.

II.     **Subject-Matter Jurisdiction**

A party bringing a motion under Rule 12(b)(1) asserts that the court lacks subject-matter jurisdiction to hear a claim. Fed. R. Civ. P. 12(b)(1). Generally, the doctrine of sovereign immunity prevents courts from exercising jurisdiction over the Federal Government. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). However, "[w]hen the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Through the FTCA, Congress decided that there are some instances when the United States will waive its sovereign immunity and allow money damages for injuries resulting from a Government employee's wrongful acts. 28 U.S.C. § 2679. FTCA liability also extends to Indian contractors acting under the ISDEAA. Pub. L. No. 101-512, § 314, 104 Stat. 1915, 1959 (1990).

Defendant makes three arguments why, in this instance, the FTCA does not waive sovereign immunity. First, Defendant argues that it remains immune from suit pursuant to the FTCA's discretionary function exception. (Doc. 19 at 7). Second, Defendant argues the FTCA does not waive immunity for Plaintiffs' claims because they are on-the-job injuries that fall under the applicable workers' compensation plan. (*Id.* at 9). Third, and relatedly, Defendant argues that the nature of Plaintiff's FTCA claim requires the Court to treat Defendant as a private employer, and under Arizona law, the exclusive remedy for on-the-job injuries would be workers' compensation. (*Id.* at 11).  These final two arguments rely on Defendant's assertion that workers' compensation covers Plaintiffs and their claims. (*Id.* at 5).  The Court will address each argument in turn.

a.  **Discretionary Function Exception**

The FTCA's discretionary function exception maintains sovereign immunity when employees perform a discretionary action on behalf of the Government. 28 U.S.C. § 2680(a). In *Berkovitz v. United States*, the Supreme Court established a two-pronged test to determine whether this exception applies. 486 U.S. 531, 536–37 (1988). First, courts ask whether there is a truly discretionary action, one that is "the product of judgment or choice"

1   and not a mandatory directive. *Id.* at 536. Second, courts ask whether the action is
2   "susceptible to a policy analysis." *Gonzalez v. United States*, 814 F.3d 1022, 1027–28 (9th
3   Cir. 2016) (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). This prong is
4   designed to fulfill Congress' wish "to prevent judicial 'second-guessing' of legislative and
5   administrative decisions grounded in social, economic, and political policy through the
6   medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio*
7   *Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  To survive a motion to dismiss and
8   satisfy this prong, a plaintiff must show that the "challenged actions are not the kind of
9   conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*,
10  499 U.S. at 325. "The focus of the inquiry is not on the agent's subjective intent in
11  exercising the discretion conferred by statute or regulation, but on the nature of the actions
12  taken and on whether they are susceptible to policy analysis." *Id.* When a Government
13  agent is afforded discretion in a particular action, courts presume that the action involves
14  the same policy considerations as those that enabled the discretionary action.  *Id.* at 324.

15      Defendant argues that the hiring, training, and supervision of employees usually
16  entails policy judgments protected by the discretionary function exception. (Doc. 19 at 89);
17  *see Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have
18  held that decisions relating to the hiring, training, and supervision of employees usually
19  involve policy judgments of the type Congress intended the discretionary function
20  exception to shield."). Because FDIHB had the discretion to hire and supervise Sloan,
21  Defendant argues, its decision to do so is protected by the discretionary function exception.
22  (Doc. 19 at 9). Plaintiffs argue that FDIHB violated its own hiring policy, either when it
23  failed to conduct a background check on Sloan or when it hired Sloan despite failing the
24  background check. (Doc. 26 at 11–12).  Plaintiffs further argue that FDIHB had no
25  discretion to violate its own policy, and so the first prong of the discretionary function
26  analysis fails because there was no discretionary action. (*Id.*)

27      In its Reply, Defendant argues that FDIHB policy is not mandatory because it does
28  not rise to the level of a federal statute, regulation, or policy. (Doc. 27 at 7). Therefore, the

first prong is satisfied because the FDIHB "exercised discretion to hire Sloan free from the mandates of any federal statute, regulation or policy." (*Id.*) And yet, in the next paragraph, Defendant argues that FDIHB's decision satisfies the second prong because the decision to hire Sloan was "grounded in social, economic, or political policy." (*Id.*) Defendant continues to argue that "the FDIHB hiring policies contain provisions that clearly demonstrate their political aspect, making the application of the discretionary function exception especially appropriate in this case." (*Id.*) Strangely, Defendant argues the decision to hire Sloan is at once "free from" and "grounded" in federal policy. (*Id.*)

Defendant cites *Big Owl v. United States*, in which a teacher used the FTCA to bring a claim against the United States after a school board failed to notify her, as was required by the staff handbook, that it might not renew her contract. 961 F. Supp. 1304, 1305–06 (D. S.D. 1997). The United States was potentially liable for the school board's actions because an Indian tribe operated the school pursuant to a grant from the Bureau of Indian Affairs. *Id.* at 1307; *see* Pub. L. No. 101-512 (imposing liability on the United States resulting from a party's performance under a grant or agreement authorized by the Tribally Controlled Schools Act ("TCSA"), Pub. L. No. 100-297). On a motion for summary judgment, the United States argued that the FTCA did not waive immunity because hiring decisions are a discretionary function. *Big Owl*, 961 F. Supp. at 1308. The teacher argued that the handbook's policy was mandatory and so the discretionary function exception did not apply. *Id.*

When assessing the first *Berkovitz* prong, the District of South Dakota found that because the school board was free to "amend and deviate from its procedures," the handbook was merely a "guide to be followed at the discretion of the Board." *Id.* at 1309. The court held that the decision to not rehire the teacher was discretionary despite violating the handbook's stated procedure. *Id.* As to the second prong, the court found that Congress intended for the school board to make employment decisions at their discretion in furtherance of the TCSA's policy of providing educational services and fostering Indian self-determination. *Id.* The court granted the United States' summary judgment motion,

holding that the school board's actions satisfied the FTCA's discretionary function exception. *Id.*

The analogy could be made that, like the handbook in *Big Owl*, FDIHB's policies are merely guidelines. And, like the TCSA, the ISDEAA allows Indian contractors discretion in hiring practices to further the policy of establishing "meaningful Indian self-determination." *See* 25 U.S.C. § 5302(b). Therefore, FDIHB's decision to deviate from its "policies" is part of the self-determination process and falls within the discretionary function exception.

However, neither Plaintiffs nor Defendant allege that FDIHB made a "judgment or choice" to deviate from its hiring policies so as to hire a sex offender. *See Berkovitz*, 486 U.S. at 536. Instead, the FDIHB's alleged failure to implement its own policy shows a lack of discretion. *See Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) ("[W]e have generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not."). And yes, Congress intended for the ISDEAA to grant Indian contractors with discretion to hire whomever they choose to further strengthen Indian self-determination. But FDIHB's self-determined policies would become meaningless if they were mere guidelines incapable of holding their creator to account. Indian self-determination is furthered by taking FDIHB's policies seriously, not by ignoring them. This is especially the case when the policies in question protect the safety of FDIHB's own employees. For these reasons, the Court finds that the facts here fail to satisfy the first *Berkovitz* prong, and so the discretionary function exception does not apply.

### b. Workers' Compensation

As noted above, Defendant's final two jurisdictional arguments rely on its conclusion that workers' compensation covers Plaintiffs' claims. (Doc. 19 at 5). They are, first, that the FTCA does not waive liability for claims covered by workers' compensation, and, second, that under Arizona law, the exclusive remedy for Plaintiffs' on-the-job injuries is workers' compensation. (*Id.* at 9, 11).

1    Under the FTCA, the United States is liable "if a private person," under similar

2    circumstances, "would be liable to the claimant in accordance with the law of the place

3    where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Defendant asserts, without

4    authority, that the Navajo Nation's law governs Plaintiffs' claims. (Doc. 19 at 5–7).

5    Traditionally however, federal courts have applied the law of the state as the law of the

6    place, even when the allegedly negligent act occurred on Indian land. *See Bear Medicine*

7    *v. United States*, 241 F.3d 1208, 1218 (9th Cir. 2001); *Seyler v. United States*, 832 F.2d

8    120, 121 (9th Cir. 1987); *Ben v. United States*, 2007 WL 1461626, at *2 (D. Ariz. May 16,

9    2007). Consequently, the Court may not surreptitiously deviate from this settled precedent.

10   The law of the place where the Defendant's alleged negligence occurred is Arizona law,

11   not the Navajo Nation's law. *See Ben*, 2007 WL 1461626.

12   Under Arizona law, workers' compensation is the exclusive remedy for injuries

13   caused by an employer acting in the scope of employment, unless an employee specifically

14   rejects workers' compensation. A.R.S. §§ 23-1022(A); 23-906(A). Employers are

15   statutorily required to post notice of employee's right to reject workers' compensation. *Id.*

16   § 23-906(D). If they do not, employees may accept workers' compensation for injuries

17   received while no noticed was posted, or they may pursue other common law remedies

18   against their employer. *Id.* § 23-906(E); *Galloway v. Vanderpool*, 205 Ariz. 252, 254

19   (2003).

20   In their Response, Plaintiffs allege that FDIHB did not post the required notices,

21   and so Plaintiffs argue they do not need to pursue their claim under workers' compensation.

22   (Doc. 26 at 9).[2] Defendant, in its Reply, does not contest the allegation that FDIHB failed

23   to post the appropriate notice.

24   Instead, Defendant argues that because Plaintiffs can choose to pursue their claims

25   through workers' compensation, they must do so. (Doc. 27 at 4). For supporting authority,

26   Defendant cites a federal regulation that is intended to provide "[g]eneral guidance . . . but

27
     [2] "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is
28   not restricted to the face of the pleadings, but may review any evidence, such as affidavits
     and testimony, to resolve factual disputes concerning the existence of jurisdiction."
     *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

is not intended as a definitive description of [FTCA] coverage, which is subject to review by the Department of Justice and the courts on a case-by-case basis." 25 C.F.R. § 900.183. The regulation suggests that claims for on-the-job injuries that are covered by worker's compensation may not be pursued under the FTCA. *Id.* This may be good general guidance. But in this case, Arizona law provides an exception so that worker's compensation is not the exclusive remedy to this claim. Furthermore, a private person in Defendant's place would not be able to prevent Plaintiffs from electing common law remedies. *See* 28 U.S.C. § 1346(b)(1). Workers' compensation does not cover these claims because Plaintiffs have elected to pursue common law remedies. For this reason, Defendant's final two arguments for maintaining sovereign immunity fail. Under the FTCA, Plaintiffs may continue to pursue their claims, and, having proper subject-matter jurisdiction, the Court may hear them.

### III.    Failure to State a Claim

Defendant also argues that "Plaintiffs failed to state a claim for negligent hiring" and moves to dismiss the Complaint under Rule 12(b)(6). (Doc. 19 at 1). Though Defendant never expounds upon the reasons why the claims fail under Rule 12(b)(6), its jurisdictional arguments imply that the Complaint fails to show that Defendant can be held liable.

A motion under Rule 12(b)(6) attacks a complaint's legal sufficiency. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must contain a short and plain statement of the grounds for the court's jurisdiction and a showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). They must also make sufficient factual allegations so that a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For reasons stated above, for liability to attach to Defendant under Arizona law, Plaintiffs must allege that FDIHB failed to post its workers' compensation notice. This allegation is a precondition to Defendant's alleged liability and the Court's jurisdiction. However, this allegation does not appear in Plaintiffs' Complaint, nor does it appear in Plaintiffs' proposed amended complaint. Without it, Plaintiffs' Complaint is legally

insufficient. The Court will therefore grant Defendant's Motion to Dismiss under Rule 12(b)(6), without prejudice, and provide Plaintiffs' fourteen days to file an amended complaint that cures the deficiencies noted herein.

**IV.     Motion to Amend Complaint**

Courts freely give leave to amend complaints, except when proposed amendments would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs' Motion to Amend Complaint seeks to add four plaintiffs to this action. (Doc. 33 at 1). Defendant argues that the addition of these parties does not cure the deficiencies it identified in its Motion to Dismiss, and thus it must be denied if the Motion to Dismiss is granted. (Doc. 34 at 1). The Court agrees. Defendant, however, does not offer any other objection to the addition of these plaintiffs. Accordingly, the Court notes that to the extent Plaintiffs timely file an amended complaint that cures the above-noted deficiencies, the Court sees no reason why adding four additional plaintiffs would prejudice Defendant at this early stage in the litigation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint (Doc. 1) is **dismissed**, with leave to file a First Amended Complaint in accordance with this Order within **fourteen (14) days**.

**IT IS FURTHER ORDERED** that the deadline to join additional parties is extended to **fourteen (14) days** from the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend Complaint (Doc. 33) is **DENIED as moot.**

…

…

…

…

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FINALLY ORDERED** that if Plaintiffs do not file a First Amended Complaint within **fourteen (14) days** of the date this Order is entered, the Clerk of Court shall dismiss this action without further order of this Court.

Dated this 8th day of October, 2020.

Honorable Diane J. Humetewa
United States District Judge