**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ophelia Anthony, et al., | No. CV-20-08002-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court is Defendant United States of America's ("Defendant") Motion for Summary Judgment (Doc. 67). Plaintiffs have filed a Response (Doc. 74), Defendant filed a Reply (Doc. 77), and Plaintiffs were permitted to file a Sur-Reply (Doc. 81). The matter is fully briefed.[1] For the following reasons, the Court grants, in part, and denies, in part, the Defendant's Motion.

**I.    Background[2]**

On August 26, 2012, non-party Garrison Sloan ("Sloan") was hired to work as an information technology ("IT") specialist in the IT department for the Fort Defiance Indian Hospital Board, Inc. ("FDIHB"). (Docs. 67 at 5; 74 at 9). Although he had begun work, his background check was not completed until August 31, 2012. (Doc. 67-3). It was not until January 2015 that FDIHB's Human Resources ("HR") Department reviewed the results of

---

[1] The parties requested oral argument on the Motion for Summary Judgment. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Unless otherwise noted, this factual background is undisputed.

Sloan's background report. (Doc. 67 at 7). The report revealed that Sloan had been convicted of "[a]ttempted surreptitious videotaping" in 2006. (Doc. 67-3). In 2015, FDIHB staff confronted Sloan about the prior conviction, and ultimately decided not to terminate him. (Docs. 67 at 7–8; 74 at 10).

On March 9, 2016, a video camera was discovered in an FDIHB women's bathroom. (Docs. 67 at 8; 74 at 10). Another recording device was found in an FDIHB unisex bathroom on December 29, 2016. (Docs. 67 at 9; 67-16 at 4; 74 at 10). A subsequent investigation revealed that the camera's images were accessed and viewed by Sloan's computer. (Docs. 67 at 9–10; 74 at 10–11). Criminal charges followed, and Sloan entered into a plea agreement in 2018, in which he pled guilty to voyeurism. (Doc. 74-12).

FDIHB, located on the Navajo Nation, operates under an Indian Self-Determination and Education Assistance Act contract with the United States Department of Health and Human Service. (Docs. 67 at 2; 74 at 9). Plaintiffs in this action are current FDIHB employees and bring this action against Defendant United States under the Federal Tort Claims Act ("FTCA"). (Doc. 39 at ¶ 5).

In their First Amended Complaint ("FAC") (Doc. 39), Plaintiffs bring four causes of action: Count I for negligence; Count II for negligent hiring, retention, and supervision; Count III for invasion of privacy; and Count IV for intentional infliction of emotional distress. (*Id.* at ¶¶ 196–220). Defendant moves for summary judgment in its favor on all four counts.

## II.    Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is

material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

**III.    Discussion**

The Court has already determined that Arizona law governs Plaintiffs' FTCA claims. (Doc. 38 at 7) ("[F]ederal courts have applied the law of the state as the law of the place, even when the allegedly negligent act occurred on Indian land."). Defendant seeks summary judgment on all four Counts in the FAC. With regard to Count I, Defendant argues Plaintiffs cannot establish the existence of a duty to warn. Defendant next asserts that it is immune from liability under Count II for negligent hiring, retention and/or supervision because the discretionary function exception to the Government's waiver of sovereign immunity applies here. Defendant further argues Plaintiffs have not met their burden in establishing a claim for invasion of privacy under Count III and alternatively, it cannot be held vicariously liable for an employee who was not acting within his scope of employment. Lastly, under Count IV, Defendant represents it did not engage in extreme and outrageous conduct with the requisite intent that Plaintiffs would suffer emotional harm.

The Court finds FDIHB owed Plaintiffs a legal duty under Count I, and there are disputes of fact material underlying Counts II and III. Summary judgment in favor of

Defendant is therefore improper on those Counts. Moreover, the Court finds the discretionary function exceptions applies to bar Defendant from liability under some, but not all, of Plaintiffs' theories of negligent hiring, supervision, and retention. Summary judgment in favor of Defendant is thus improper on Count IV. The Court will address each of Defendant's arguments in turn.

### A.   Count I – Negligence in Failure to Warn

As alleged in the FAC, Plaintiffs' negligence failure to warn claim asserts that FDIHB had a duty to "warn and protect its employees from any danger of which FDIHB knew or should have known" including the duty to "warn its employees and protect them from a sexual predator in FDIHB's employ . . . ." (Doc. 39 at ¶¶ 198–200). In its Motion, Defendant argues this claim should be dismissed because "no such duty to warn employees of their co-worker's criminal history exists in law." (Doc. 67 at 14).[3] Defendant further asserts that no such duty can exist because FDIHB was prohibited from disclosing any information it obtained in response to the background check it ran on Sloan under the Fair Credit Reporting Act ("FCRA"). (*Id.* at 13).[4] The Court will address these arguments in turn.

To bring a negligence claim, a plaintiff must show "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The existence of a duty is a legal question for the Court to decide. *Id.* "Whether the defendant owes the

---

[3] In its Reply, Defendant also argues that this claim cannot stand because Plaintiffs have failed to identify a specific FDIHB employee who was obligated to warn Plaintiffs of another employee's criminal history. (Doc. 77 at 2). Arguments addressed for the first time in a Reply will not be considered by the Court. However, the Court notes that Defendant provides no legal authority to support its argument that Plaintiffs carry this particular burden, and its mere contention is inadequate to show Defendant is entitled to judgment as a matter of law under Federal Rules of Civil Procedure 56(a). The Ninth Circuit has found adequate FTCA claims based on the alleged acts of unknown employees and, accordingly, the Court will not require otherwise of Plaintiffs. *See e.g., Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *Baker v. United States*, 817 F.2d 560, 561–62 (9th Cir. 1987).

[4] Defendant had argued that the Privacy Act also prohibited such disclosure, but it withdrew this argument after finding authority to the contrary. (Doc. 77 at 3).

plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id.* The other elements of a negligence action are factual issues for the jury to resolve. *Id.*

The parties disagree on whether Defendant owed Plaintiffs a duty to warn them about Sloan. The element of duty is reserved for determining whether the relationship between individuals "imposes upon one a legal obligation for the benefit of the other." *Markowitz v. Arizona Parks Bd.*, 706 P.2d 364, 367 (Ariz. 1985) (citations omitted). Arizona common law recognizes various categorical relationships that give rise to the existence of a duty. *Gipson*, 150 P.3d at 232; *see also Bond v. Cartwright Little League, Inc.*, 536 P.2d 697, 703 (Ariz. 1975). Arizona employers have a duty to provide a reasonably safe workplace and to warn employees of dangers in the workplace of which the employer knows or should know and of which the employee is unaware and unlikely to discover. *Flynn v. Lindenfield*, 433 P.2d 639, 642 (Ariz. Ct. App. 1967); *see also Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1045 (Ariz. 1990).

It is undisputed an employer-employee relationship exists between FDIHB and the Plaintiffs. FDIHB thus owed Plaintiffs a duty to warn them of danger in the workplace as a matter of law. Defendant admits as much in its Reply. (*See* Doc. 77 at 2) (stating that FDIHB "owed a duty to warn its employees of known hazardous conditions in their workplace."). Under Arizona law, that is the end of the Court's threshold inquiry into whether a duty exists. *Gipson*, 150 P.3d at 230.

Indeed, the Arizona Supreme Court has repeatedly emphasized the distinct analyses between duty and breach. *See e.g.*, *Id*. While the existence of a duty is an issue of law, whether there has been a breach of duty "is an issue of fact that turns on the specifics of the individual case." *Id*. Lower courts have been corrected for erroneously confusing the "issue of the existence of any duty with the specific details of the required standard of conduct." *Robertson*, 789 P.2d at 1044; *see also Markowitz*, 706 P.2d at 367 ("These details of conduct bear upon the issue of whether the defendant who does have a duty has breached the applicable standard of care and not whether such a standard of care exists in the first

instance."). Such confusion leads courts to wrongfully decide on a general basis whether a defendant had a duty to take certain action. *Markowitz*, 706 P.2d at 369. Arizona courts have unequivocally stated, for example, that "foreseeability is not a factor to be considered by courts when making determinations of duty;" rather, it is a factual inquiry reserved for the jury to determine "whether a defendant acted reasonably under the circumstances or proximately cause injury to a particular plaintiff." *Gipson*, 150 P.3d at 231.

The parties seem to ask the Court to resolve, as a matter of law, whether Sloan's known criminal history posed a foreseeable risk to Plaintiffs that FDIHB was under a duty to warn. But this issue does not involve determining the existence of a duty. Rather, it involves details of FDIHB's conduct that underlie the element of breach. The Court has already found FDIHB owed Plaintiffs a duty to warn of dangers in the workplace as their employer. Whether Sloan posed a foreseeable risk that FDIHB should have warned other employees of is a factual inquiry for the jury to determine, as is whether FDIHB acted reasonably under the circumstances or proximately caused injury to the Plaintiffs. *Gipson*, 150 P.3d at 231.

This is especially so here, where there are obvious disputes of material fact a jury needs to resolve. Defendant argues FDIHB's prior knowledge of Sloan's "long-ago criminal conviction" alone does not give rise to a foreseeable risk to the Plaintiffs. (Doc. 77 at 4). But Plaintiffs contend FDIHB's knowledge of Sloan's criminal history extended beyond his prior conviction. Indeed, Plaintiffs allege that FDIHB received complaints from a patient in early 2015 (Docs. 67 at 6–7), that Sloan had committed numerous sexual assaults and other crimes against her, that he was required by law to register as a sex offender but failed to do so, and that he had violated probation. (Docs. 74 at 5; 74-3; 74-4).[5] Given these complaints were submitted while Sloan was an active FDIHB employee and prompted FDIHB to further investigate his criminal history, these contradicting facts

---

[5] Defendant only objects to testimony by Sloan's ex-wife as inadmissible evidence due to double hearsay (Doc. 67 at 17), an objection that may be made at trial if Plaintiffs offer the testimony. The parties both refer to the current patient's complaints in 2015 prompting further investigation into Sloan as admissible evidence. (Docs. 67 at 6–7; 74 at 5).

1    all go to the issue of foreseeability.  It is not the Court's place to resolve these issues on

2    summary judgment.

3         The parties similarly argue over whether the cameras in the bathroom created a

4    dangerous condition that FDIHB was under a duty to warn Plaintiffs about. For example,

5    the parties set forth different timelines as to when FDIHB investigated the cameras and

6    was made aware of the danger it posed to Plaintiffs. To justify FDIHB did not know the

7    cameras posed a danger, Defendant alleges the FDIHB Director of IT security "did not

8    have the opportunity to investigate the camera in 2016." (Doc. 67 at 9). Over a year later

9    in 2017, he recovered "photos from a bathroom . . . and fragments from inside someone's

10   house," but the camera still could not be linked to any particular person at that time. (*Id.*

11   at 9).

12        In contrast, Plaintiffs point to an incident report (Doc. 67-16 at 7–8) detailing how

13   two FDIHB security officers accessed the camera on the day it was found in March 2016

14   and discovered its memory card password as well as twenty four files, including videos

15   showing the bathrooms users' "private areas of their bodies." (Docs. 74 at 6; 74-21 at 1;

16   67-16 at 8). According to the report, the contents of the camera were reported to various

17   supervisors, including the current Chief Human Resources Officer. (Doc. 67-16 at 8; 74-

18   21 at 1). Yet, in her deposition, the Chief Human Resources Officer denies having any

19   knowledge of the contents of the camera until a year later in 2017. (Doc. 67-12 at 22).

20   Again, these issues do not involve the threshold determination of duty. It involves details

21   of FDIHB's conduct that underlie the element of breach, which is improper for the Court

22   to consider on summary judgment. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341,

23   344 (9th Cir. 1978) (explaining it is not the court's role to weigh the credibility of witnesses

24   or other evidence when considering whether summary judgment is proper).

25        Finally, the Court rejects as insufficiently supported Defendant's contention that the

26   FCRA barred FDIHB from warning its employees of Sloan's past. Defendant only

27   generally cites to the FCRA, and no other authority for its assertion that it was barred by

28   law from warning Plaintiffs about the danger posed by Sloan. (Doc. 67 at 13) (citing 15

1    U.S.C. § 1681, *et. seq.*). As the movant, Defendant must show that it is entitled to relief.

2    Fed. R. Civ. P. 56(a). A court is not required to go searching for legal support when a party

3    only generally indicates where such support might be. (Doc. 25 at 5 n.2).

4          In sum, the Court denies Defendant summary judgment on Count I because

5    Plaintiffs have met their burden in establishing FDIHB owed Plaintiffs a duty as Plaintiffs'

6    employer. FDIHB's conduct in addressing Sloan's criminal history and the cameras in the

7    bathroom are issues relating to Defendant's alleged breach of that duty and will be for

8    Plaintiffs to prove at trial. *Markowitz*, 706 P.2d at 369.

9          **B.      Count II – Negligent Hiring, Retention, and Supervision**

10         Plaintiffs also argue FDIHB was negligent or reckless in hiring, retaining, and

11   supervising Sloan. Arizona courts have applied Restatement (Second) of Agency § 213

12   (1958) to consider these types of claims. *See e.g.*, *Kassman v. Busfield Enters.*, *Inc*., 639

13   P.2d 353, 356 (Ariz. Ct. App. 1981); *Olson v. Staggs-Bilt Homes, Inc.*, 534 P.2d 1073,

14   1076 (Ariz. Ct. App. 1975). An employer is liable under a theory of negligent hiring,

15   retention, and supervision if it fails to make proper regulations; employs improper persons

16   involving risk of harm to others; fails to supervise activity; or permits or fails to prevent

17   negligent or other tortious conduct by employees or agents on the premises or with

18   instrumentalities under the employer's control. Restatement (Second) of Agency § 213

19   (1958). Plaintiffs specifically assert that FDIHB is liable for (1) failing to conduct a

20   background check on Sloan prior to hiring him; (2) failing to implement a procedure for

21   reviewing background checks done on employees; (3) failing to terminate Sloan when his

22   criminal history was discovered; (4) employing Sloan in the IT department even when it

23   had knowledge of his prior conviction; and (5) failing to terminate Sloan when he provided

24   false information related to his background. (Doc. 39 at 26–27; Doc. 74 at 16–17, 20).

25   Defendant argues the conduct forming the basis for all of Plaintiffs' assertions are barred

26   under the FTCA's discretionary function exception.

27         Absent express consent, the United States enjoys sovereign immunity and cannot

28   be sued. *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). The FTCA

"constitutes a limited waiver of that immunity." *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 366 (9th Cir. 1986). That waiver, however, is subject to a number of exceptions, one of which is the discretionary function exception. This exception allows the United States to maintain immunity when employees perform a discretionary action on behalf of the Government. 28 U.S.C. § 2680(a); *Nanouk v. United States*, 974 F.3d 941, 944 (9th Cir. 2020). Applicability of the exception to a particular FTCA claim "turns on what it is 'based upon' and whether *that* specific wrongful act involves a 'discretionary function or duty.'" *Miller v. United States*, 992 F. 3d 878, 877 (9th Cir. 2021) (citing 28 U.S.C. § 2680(a) (emphasis in original).

The Supreme Court has established a two-pronged test to determine whether this exception applies. *Berkovitz v. United States*. 486 U.S. 531, 536–37 (1988); *see also Gonzalez v. United States*, 814 F.3d 1022, 1027–28 (9th Cir. 2016) (distinguishing the first "discretionary act prong" from the second "policy judgment prong"). Under the discretionary act prong, courts first ask whether the act in question is truly a discretionary action, i.e., is "the product of judgment or choice." *Berkovitz*, 486 U.S. at 536. The discretionary function exception does not apply when an applicable "statute, regulation, or policy specifically prescribes a course of action." *Id.* Whether or not a mandatory directive has been imposed "is not primarily a factual inquiry, but a legal one." *Myers v. United States*, 652 F.3d 1021, 1030 n.5 (9th Cir. 2011). In making the determination, courts may consider whether the language of the controlling authority at issue "are casted in suggestive ([e.g.] 'should') rather than mandatory ([e.g.] ('must') terms." *Sabow v. United States*, 93 F.3d 1445, 1452–1453 (9th Cir. 1996), *as amended* (Sept. 26, 1996). The exception does not apply to acts governed by mandatory directives because those acts, by definition, do not involve choice. *Berkovitz*, 486 U.S. at 544. "If the act did not involve an element of judgment or choice, the analysis ends there and the plaintiff's claim may proceed." *Nanouk*, 974 F.3d at 945.

But if the government's conduct involved an element of judgment or choice, a court must then move to the second policy judgment prong and ask whether the discretionary

decision "is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. In doing so, courts ask whether the action or decision "is grounded in social, economic, and political policy." *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014). The policy judgment prong is an objective inquiry focusing on whether the nature of the employee's conduct is "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). The inquiry does not consider the employee's subjective intent in exercising the discretion conferred. *Id*. If the challenged action or decision is "susceptible to a policy analysis," the government maintains its immunity and a court lacks subject matter jurisdiction to review the claim. *Gonzalez*, 814 F.3d at 1027–28) (quoting *Gaubert*, 499 U.S. at 325). Notably, decisions relating to "hiring, training, and supervision of employees usually involve policy judgments" for these purposes. *Miller*, 992 F. 3d at 886 (citing *Vickers v. United States*, 228 F. 3d 994, 950 (9th Cir. 2000).

Defendant argued in its Motion to Dismiss (Doc. 19) that FDIHB's hiring, training, and supervision of employees entails policy judgments protected by the discretionary function exception of the FTCA. (*Id*. at 8–9). The Court ultimately ordered the discretionary function exception did not confer immunity onto the Defendant with regards to Count II because the facts of the case failed to satisfy the first prong of the *Berkovitz* test. (Doc. 38 at 6). Specifically, the Court found FDIHB's alleged failure to implement its own hiring policies showed a lack of discretion. *Id*. Defendant now urges the Court to re-consider the discretionary function exception in light of undisputed facts that arose during discovery[6] showing FDIHB did conduct a background check on Sloan in 2015 after hiring him in 2012. (Docs. 67-3; 67 at 15; 74 at 9).

Plaintiffs contend FDIHB negligently hired, supervised, and retained Sloan in several ways. The Court must assess whether the policies governing this alleged misconduct directed mandatory action or left it to FDIHB employees to make discretionary decisions. If the former, the court retains subject matter jurisdiction over the claim.

---

[6] When considering Defendant's Motion to Dismiss, the Court was required to take as true Plaintiffs' allegations that FDIHB failed to follow its own policies when it failed to conduct a background check on Sloan or hired him despite his criminal history.

The parties both agree that FDIHB Policy 1.6 (last revised on 4/15/11) is the policy that applied at the time of Sloan's hiring in 2012. (Doc. 67-2) ("Policy 1.6" or "Policy"). The Court will thus look to Policy 1.6 as the applicable federal policy[7] that governs FDIHB's course of action. *Berkovitz*, 486 U.S. at 536. Thus, at issue is whether FDIHB's alleged negligent actions are governed by discretionary policy provisions under Policy 1.6, and thus protected by the FTCA exception, or instead are mandatory directives that give this Court jurisdiction to review the claims. To be clear, the Ninth Circuit has stated that whether challenged conduct is negligent or not is irrelevant to determining "whether the decision of a government actor fits within the discretionary function exception." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989). Those issues will remain for trial. Instead, the determination is made by looking at the language of the applicable policy and objectively assessing the defendant's conduct. *Gaubert*, 499 U.S. at 325. If the Court finds any action was instead governed by mandatory Policy directives, the FTCA exception does not apply. *Berkovitz*, 486 U.S. at 544.

### i.    Whether the discretionary function applies to FDIHB's failure to timely conduct a background check on Sloan

First, Plaintiffs argue FDIHB acted negligently when it failed to conduct a background check on Sloan prior to hiring him. (Doc. 74 at 17). Defendant argues the language of Policy 1.6 allows FDIHB to hire employees before completing their background investigations. (Doc. 77 at 6).

Policy 1.6 III(I)(1), (2), and (4) explain the relevant procedures for conducting employee background checks:

(1) Once the supervisor notifies HR of selected final applicants for a vacant

---

[7] Defendant contends FDIHB's "policies and processes were in a state of flux" at the time Sloan was hired, so Policy 1.6 could not rise to the level of a federal regulation or policy as contemplated in *Berkovitz*." (Doc. 67 at 19). However, Defendant admits that several provisions in Policy 1.6 directly reference the Navajo Preference in Employment Act ("NPEA") to ensure compliance with the NPEA and other applicable federal Indian preference laws. (Doc. 67-2 at 1–3, 5, 8). The Court views this sufficient to consider Policy 1.6 as an applicable federal policy under *Berkovitz* and will not accept its "state of flux" argument as an excuse to avoid its controlling authority.

position, HR shall conduct . . . background or criminal investigations . . . . and any other investigations as appropriate for the position as determined by HR . . . .

(2) If the applicant fails any of the above investigation processes, the applicant shall not be offered the position.

. . . .

(4) If an offer is made to an applicant contingent upon the successful outcome of background, drug testing, or other investigations, and the applicant fails any of the above investigation processes, the offer will be rescinded. *If the applicant is a current employee*, such failure will be grounds for termination.

(Doc. 67-2 at 8–9) (emphasis added). Plaintiffs point to Subsections (1) and (2) to assert FDIHB was required to complete Sloan's background check prior to hiring him in 2012 and failed to do so until 2015. (See Doc. 74 at 17). Defendant argues the language in Subsection (4), however, "explicitly contemplates" a scenario in which an employee could be hired prior to the completion of a background check. (Doc. 77 at 6).

The Court agrees with Defendant that nothing in the language of the Policy mandates FDIHB to *complete a review* of a background investigation prior to hiring an applicant. Subsection (4) indeed contemplates scenarios in which the "outcome" of investigations is determined following the employee's start date. (Doc. 67-2 at 9). While Subsections (1) and (2) both use the term "applicant" the Court notes Subsection (4) distinguishes the status of an "applicant" from a "current employee." This underscores the conclusion that when to complete the required background investigation was a discretionary decision.

The language of Policy 1.6 allows FDIHB discretion to either give applicants employment offers contingent on them passing a background investigation or otherwise conduct their investigations after already hiring them. Because Policy 1.6 III(I)(4) provides an element of choice, which FDIHB exercised, the Court must now ask whether the decision to not complete Sloan's investigation until years after his hire is a choice that is susceptible to a policy analysis. *Berkovitz*, 486 U.S. at 536.

Under the policy judgment prong's objective inquiry, the Court does not think FDIHB's inaction for three years is conduct susceptible to policy analysis. Government

actors generally enjoy discretion in conducting investigations, but "this discretion does not extend to the question of whether to . . . investigate *at all* . . . ." *Vickers*, 228 F.3d at 953 (holding the discretionary function exception did not apply to shield INS investigators' failure to report and investigate because such inaction constituted a failure to follow the mandatory requirements requiring reporting and investigation) (emphasis in original).

Policy 1.6 III(I)(1) indeed imposes a mandatory requirement that "HR shall conduct . . . background or criminal investigations." (Doc. 67-2 at 8). Defendants admit "there was no action concerning [Sloan's] background report until 2015, other than one be performed." (Doc. 77 at 7). Failure to review the outcome of a required investigation for three years is not an action that could be said to be grounded in social, economic, or political policy. *Vickers*, 228 F.3d at 953. Thus, the Court cannot find the discretionary function exception applies to this inaction. Whether FDIHB acted negligently in reviewing Sloan's background report will be for Plaintiffs to prove at trial.

### ii.    Whether the discretionary function applies to FDIHB's failure to implement a procedure for background investigations

Relatedly, Plaintiffs argue FDIHB acted negligently when it failed to implement a procedure for reviewing employee background checks. (Doc. 74 at 19–20). Defendant responds by asserting the Navajo Preference in Employment Act ("NPEA") trumps FDIHB policy regarding background checks. (Doc. 77 at 5–6). Defendant's interpretation of the NPEA is that background checks are not relevant under the Act when deciding whether a Navajo tribal member is qualified for employment purposes, so FDIHB was required to hire Sloan because he is an enrolled member of the Navajo tribe. (Doc. 67 at 19). Plaintiffs persuasively respond the NEPA "does not require FDIHB hire or retain an employee who does not meet the minimum requirements of the job description and does not exempt FDIHB from its own mandatory policies." (Doc. 74 at 18). The Court agrees and again turns to the language of Policy 1.6.

Policy 1.6 III(I)(1) states that "HR *shall* conduct reference checks, pre-employment drug testing, background or criminal history investigations, and any other investigations as

appropriate for the position as determined by HR . . . ." (Doc. 67-2 at 8). The use of the word "shall" in a provision generally removes any discretion in a directive. *See Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991). This general proposition applies unless (a) the underlying authority is non-binding, *Lam v. United States*, 979 F.3d 665, 677 (9th Cir. 2021); or (b) the underlying mandate first requires an exercise of judgment or consideration of factors before taking action. *Gonzalez*, 814 F.3d at 1029.

The requirement that HR "shall conduct" background investigations in Policy 1.6 III(I)(1) is set forth in a binding authority and nothing in its language requires an initial exercise of discretion before HR is to take action. Therefore, the Court views Policy 1.6 III(I)(1) as enforcing a mandatory directive on HR to carry out a procedure for conducting employee background investigations. Although Policy 1.6 affords HR discretion to carry out other investigations as it deems appropriate, it imposes a mandatory requirement that HR is to specifically conduct an exhaustive list of investigations, including background investigations. Because FDIHB has a mandatory duty to conduct background investigations, FDIHB's lack of procedure to review those background investigations fails the first prong of the *Berkovitz* test. *Vickers*, 228 F.3d at 953. Defendant does not enjoy immunity from this alleged misconduct and Plaintiffs can proceed on this theory of negligent hiring, retention, and supervision at trial. *Nanouk*, 974 F.3d at 945.

### iii.     Whether the discretionary function applies to FDIHB's decision to retain Sloan when it discovered his criminal history

Plaintiffs also argue FDIHB acted negligently when it failed to terminate Sloan after learning of his past criminal history. (Docs. 39 at 27; 74 at 18). Defendant says Policy 1.6 affords FDIHB discretion in choosing to retain Sloan. (Doc. 77 at 6). Subsection (4) of the Policy sets forth the procedure for when an individual "fails" a background check:

> If an offer is made to an applicant contingent upon the successful outcome of background, drug testing, or other investigations, and the applicant fails any of the above investigation processes, the offer will be rescinded. If the applicant is a current employee, such failure *will be grounds for termination*.

(Doc. 67-2 at 9) (emphasis added). Defendant contends the phrase "will be grounds for termination" in Policy 1.6 III(I)(4) suggests FDIHB could, but was not required to, terminate Sloan upon knowledge of his prior criminal conviction. (Doc. 77 at 6). Moreover, it is undisputed that Policy 1.6 does not define what it means to "fail" a background check. (Doc. 67 at 4–5). Defendants assert in retaining Sloan, FDIHB determined Sloan had not failed his background check under Policy 1.6 and was in its discretionary right to retain him. (Doc. 67 at 8).

The Court assumes that the Policy's use of the term "will be grounds" establishes a mandatory directive for FDIHB to terminate current employees who fail their background check. *See e.g.*, *Routh*, 941 F.2d at 855 (citing with approval a district court's conclusion that the word "will" was akin to the word "shall" and generally removes discretion under the exception) (citing *Pelham v. United States*, 661 F. Supp. 1063, 1069 (D.N.J. 1987)).

However, in accordance with Ninth Circuit precedent, a provision that uses mandatory language does not impose a mandatory duty if the underlying mandate first requires an exercise of judgment or consideration of factors before taking action. *See Gonzalez*, 814 F.3d at 1029 (finding that although the applicable guidelines imposed a mandatory duty that agents shall promptly transmit information, an agent must first consider whether the information is credible and the criminal activity is serious before transmitting). In *Gonzalez*, the Ninth Circuit found that although the reporting directives were stated in mandatory terms, the guidelines' lack of definitions for what constituted "credible information" or "serious criminal activity" was evidence that the agents were required to make judgment calls prior to making their reports. This action (or inaction) was therefore shielded by the discretionary function exception. *Id.* at 1029. In reaching this decision, the court noted that the agents may disagree among themselves when making these judgment calls and stated a "'case-by-case' evaluation presumes significant [] discretion." *Id.* at 1029–30 (citing *Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993)).

Here, even if Policy 1.6 III(I)(4) imposes a mandatory duty for FDIHB to terminate

employees who fail their background check, it first requires FDIHB employees to exercise an initial judgment call to determine whether an employee fails their background check. Undefined elsewhere in Policy 1.6, the Court finds that whether one "fails" an investigation is a judgment call for FDIHB staff. Defendant notes that various HR staff testified that whether an employee failed a background check was evaluated on a case-by-case basis. (Doc. 67 at 7). Though this case is in the extreme given the mounting background information gathered on Sloan the Court finds FDIHB's determination that he did not fail his background check and decision to retain him meets the requirements of the discretionary act prong one under *Berkovitz*.

Under the policy judgment prong's objective inquiry, the Court must now consider whether FDIHB's determination that Sloan did not fail his background check is susceptible to policy analysis. Because the Court concludes Policy 1.6 permits discretion, "a 'strong presumption' arises that [FDIHB's] actions were grounded in policy considerations." *Gonzalez*, 814 F.3d at 1032. Circuit precedent makes it difficult for the Court to find that FDIHB's decision to retain an employee with a prior criminal conviction is not objectively a type of decision that is grounded in social, economic, or political policy since "hiring . . . employees usually involve policy judgments" for these purposes. *Miller*, 992 F. 3d at 886. Thus, the Court finds Defendant is immune from liability under the discretionary function exception as to the retention of Sloan despite his prior criminal conviction.

### iv. Whether the discretionary function applies to FDIHB's employment of Sloan in an IT position despite his prior conviction

Plaintiffs further argue Sloan was disqualified from working in the IT department because his prior conviction made him unsuitable for his IT position and FDIHB was required to terminate him and failed to do so. (Doc. 74 at 17). Again, Defendants argue it was within FDIHB's discretion to retain Sloan despite his conviction, and FDIHB made a "judgment call" to continue employing Sloan. (Doc. 77 at 6–7). Policy 1.6 III(G)(3)(a) concerns criminal offenses and sets forth the following:

An individual who has a conviction or a deferred judgment for an offense

which bears upon suitability for a specific or any position *will be disqualified* from consideration. For example, individuals who have been convicted of embezzlement or theft would be disqualified from working in positions that involve exposure to finances or sensitive information; individuals convicted of assault or child abuse would not be suitable for any position with FDIHB.

(Docs. 67-2 at 7; 74 at 2, 17) (emphasis added).

Similar to Policy 1.6 III(I)(4), at issue when interpreting Policy 1.6 III(G(3)(a) for purposes of the discretionary function exception is whether the term "will be" allows for discretion or is a mandatory directive. Under *Routh*, the Court views Policy 1.6 1.6 III(G(3)(a)'s use of "will be disqualified" as a mandatory duty on FDIHB to disqualify from employment individuals with convictions "which bear upon suitability for a specific or any position." 941 F.2d at 855.

Notwithstanding, the underlying mandate that individuals be disqualified first requires an exercise of judgment to consider whether the individual's conviction is the type that indeed disqualifies the individual from employment — i.e., whether conviction that "bears upon suitability for a specific or any position." Apart from the examples of embezzlement, theft, assault, and child abuse, the Policy does not provide guidance on how to treat Sloan's prior conviction for surreptitious recording. Just as "failure" of a background check is not defined by Policy 1.6, neither is a conviction that "bears upon suitability" of a given position. Thus, under *Gonzalez*, consideration of Sloan's conviction required FDIHB's exercise of judgment, and this meets the requirements of the first discretionary act prong. 814 F.3d at 1029

Under the policy judgment prong's objective inquiry, the Court must find that FDIHB's determination of whether an individual's prior conviction bears on the individual's suitability for a given position is a judgment call "grounded in social, economic, or political policy." (Doc. 67 at 19). In making this determination, HR staff will likely have to evaluate various factors, including the subject matter and seriousness of the offense in lieu of the responsibilities and duties of a given position. These are the types of judgment calls made in hiring decisions the discretionary function exception shields.

*Miller*, 992 F. 3d at 886. Thus, the Court finds Defendant is immune from liability under the discretionary function exception as to the employment of Sloan despite his prior criminal conviction.

> **v.      Whether the discretionary function applies to FDIHB's failure to terminate Sloan when he misrepresented his background**

Plaintiffs lastly argue FDIHB acted negligently when it failed to terminate Sloan upon learning he provided false information about his criminal background. Policy 1.6(III)(I)(3) states that:

> If an applicant supplies false information or misrepresents information on either the application or the resume, the applicant *shall be* disqualified from further consideration or, *if already employed, terminated*.

(Doc. 67-2 at 9) (emphasis added). FDIHB's candidate application further explains "[a]ny falsification, misrepresentation, or omission, whenever discovered, shall be considered legitimate and sufficient grounds for disqualification from employment, or if discovered after employment, dismissal." (Doc. 74-1 at 9).

It is easy for the Court to conclude that FDIHB was under a mandatory directive to terminate any employee supplying false information on his application. This duty does not require an initial judgment consideration. False information is false information. Once FDIHB determined that an employee had supplied false information, no other option remained but termination. It is undisputed, and Defendant admits, that FDIHB discovered Sloan lied about his criminal history. (Doc. 77 at 2).  The action required from FDIHB upon discovering an employee had lied was mandatory, Defendant is not protected by the discretionary function in this instance. Plaintiffs can proceed on this theory of negligent hiring, retention, and supervision at trial.

In sum, the Court finds FDIHB's Policy afforded it discretion to (1) retain, and not terminate, Sloan when it discovered his criminal history; and (2) employ Sloan in an IT position despite his prior conviction. The Defendant is immune from liability on these assertions under the discretionary function exception of the FTCA. However, the Court

finds FDIHB was under mandate to (1) review the results of Sloan's background report prior to three years after his hire date; (2) implement a procedure for reviewing background reports; and (3) terminate employees who provide false information about their background. The discretionary function exception does not apply to the latter three assertions, and Plaintiffs can proceed on these theories of negligent hiring, retention, and supervision at trial. Thus, summary judgment on Count II is improper.

### C.   Count III – Invasion of Privacy

In the FAC, Plaintiffs allege a claim of invasion of privacy against Sloan and seek to hold FDIHB vicariously liable for Sloan's misconduct. (Doc. 39 at 27–28). Plaintiffs contend Sloan invaded their privacy by publicly disclosing their private facts. (*Id.*) Arizona courts recognize the four-part classification of the tort of invasion of privacy under the Restatement (Second) of Torts (1997) ("the Restatement"). *See Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 784 (Ariz. 1989) (citing *Reed v. Real Detective Publishing Co.*, 162 P.2d 133 (Ariz. 1945)). Those four classifications are invasion by (1) public disclosure of private facts; (2) intrusion upon seclusion; (3) false light; and (4) appropriation of another's name or likeness. *See generally* Restatement (Second) of Torts § 652A. The different types of classifications vary in degrees of tortious interference. *See generally Id.* at cmt. b.  However, "it is possible and not infrequent for privacy to be invaded by the same act . . . in two or more ways . . . . When this occurs, the plaintiff may maintain his action for invasion of privacy upon any or all of the grounds available to him." *Id.* at cmt. d. Although the court finds Plaintiffs have not put fort sufficient evidence showing they could establish the element of publicity under invasion by public disclosure of private facts, the Court finds that there is sufficient evidence in the record by which Plaintiffs could prove invasion by intrusion upon seclusion.

### i.   Whether Sloan publicly disclosed Plaintiffs' private facts

An individual may be liable to another for invasion of privacy "when one publicizes a matter concerning the private life of another that would be highly offensive to a reasonable person and is of no legitimate concern to the public." *Id.* at § 652D. Arizona

case law sheds little light on the publicity element in the context of public disclosure of public facts. *See e.g.*, *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 854–55 (Ariz. Ct. App. 1997) (citing Restatement (Second) of Torts § 652D, cmt. a); *Advanced Cardiac Specialists, Chartered v. Tri-City Cardiology Consultants, P.C.*, 214 P.3d 1024, 1028 n.7 (Ariz. Ct. App. 2009); *Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 995–96 (Ariz. Ct. App. 2019), *vacated in part*, 482 P.3d 390 (Ariz. 2021). The Arizona Supreme Court has adopted the rule that "where not bound by its previous decisions or by legislative enactment, it would follow the Restatement of the Law." *Reed*, 162 P.2d at 137; *see e.g.*, *Hart*, 947 P.2d at 854–55 (turning to the Restatement for the definition of publicity after finding there was no Arizona law on point). Thus, the Court turns to the Restatement for further guidance.

The Restatement distinguishes the "publicity" element required for liability of public disclosure of private matter from the "publication" element required for liability of defamation. Restatement (Second) of Torts § 652D, cmt. a. To "publicize," means the matter is made "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id*. The key difference is not the manner of the communication, but the certainty that the communication reaches or will reach the public. *Id*. Although the facts of the case show the matter "concerned the private life of another that would be highly offensive to a reasonable person and is of no legitimate concern to the public," Plaintiffs have made an insufficient showing of how Sloan publicized Plaintiffs' private affairs. Plaintiffs' do not explain how disclosure of video clips to a discrete number of employees charged with the duty to investigate those video clips, such as two FDIHB security officers, one IT Director and a few FBI agents, rises to the level of publicity. "[I]t is not an invasion of the right of privacy, within [652D] to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Restatement (Second) of Torts § 652D, cmt. a.

However, the Restatement explains that a court has discretion to extend coverage of

the publicity element when standards under § 652B are met. *Id.* (noting that under 652B, prying and intruding into private affairs and concerns of another may be actionable). This extended coverage would entail applying the standard in a cause of action for intrusion upon seclusion, where the intrusion is "'into a private place,' such as forcing one's way into the plaintiff's home or, with the use of aids, observing plaintiff's 'private affairs.'" *Snyder v. Banner Health*, No. 1 CA-CV 13-0630, 2014 WL 4980382, at *7 (Ariz. Ct. App. 2014) (citing Restatement (Second) of Torts 625B, cmt. b–c). Because of the strong, undisputed facts in this case, including that Sloan pled guilty to voyeurism, (Doc. 74-12), the Court, in its discretion, will extend coverage of the publicity element to include the lower standard for § 652B intrusion of seclusion. Restatement (Second) of Torts § 652D, cmt. a.

### ii.    Whether Sloan intruded on Plaintiffs' seclusion

Defendant argues that "no facts have been discovered in this case that would justify" an invasion of privacy claim moving forward. (Doc. 67 at 20). The Court disagrees. Intrusion of seclusion is a class of the tort of invasion of privacy recognized by Arizona courts. *See Godbehere*, 783 P.2d at 784; *see also* Restatement (Second) of Torts § 652B. Under this tort theory, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hart*, 947 P.2d 853 (citing Restatement (Second) of Torts § 652B).

It is undisputed that Sloan intruded on the Plaintiffs private matters under § 652B. The element of intrusion can be met by "use of the defendant's senses, with or without mechanical aids, to oversee . . . the plaintiff's private affairs . . . as by looking into his upstairs windows with binoculars . . . ." Restatement (Second) of Torts § 652B. Sloan has pled guilty to invading Plaintiffs' privacy because he "photographed, videotaped, filed, digitally recorded, or otherwise viewed" Plaintiffs while they were "in a state of undress or partial dress," and while they were "urinating or defecating." Arizona Revised Statues (A.R.S.) 13-1424(C)(2)(a), (c); *see* (Doc. 74-12). These actions amount to the exact type

of intrusion by mechanical aids described under § 652B. It is not difficult for the Court to find that this type of intrusion would be highly offensive to a reasonable person.

It is not difficult for the Court to find Sloan's intrusion invaded Plaintiffs' private matters. Sloan has pled guilty to "knowingly invad[ing] the privacy of [the Plaintiffs] without the knowledge of the other person for purpose of sexual stimulation." Arizona Revised Statues (A.R.S. 13-1424(A); *see* (Doc. 74-12). Seventeen Plaintiffs, the majority of whom are women, all have identified themselves in still-shots and videos Sloan had taken of them in the bathroom. (Doc. 39 at 5–18). The images are of Plaintiffs while they were using the bathroom, partially clothed (*Id*.), and while they were fully naked in the employee fitness area showers (*Id.* at 8, 14, 18,). One Plaintiff was pregnant while photographed (*Id.* at 17) and another was experiencing her menstrual cycle while photographed, which is a very sacred time for Navajo women. (*Id*. at 14). These images are not only of Plaintiffs' private matters, but their intimate private person. This is more than enough to meet the private affairs element under § 652B. Defendant's argument that "no facts have been discovered in this case that would justify" an invasion of privacy claim is meritless. (Doc. 67 at 20).

### iii.   Whether FDIHB can be held vicariously liable for Sloan's misconduct

Plaintiffs maintain Defendant is liable for Sloan's invasion of Plaintiffs' privacy based on a theory of vicarious liability where Sloan's misconduct was incidental to his employment. (Doc. 20–21). Defendant's main argument  is that it cannot be held vicariously liable for Sloan's misconduct. Defendant asserts "the doctrine of *respondeat superior* does not apply to FTCA actions and the United States cannot be liable under the FTCA merely because it was Sloan's employer." (Doc. 67 at 20). There is good reason why Defendant has no citation to authority following this statement: it is a blatant misstatement of law.[8] For purposes of the FTCA, scope of employment determinations are made "according to the principles of *respondeat superior* of the state in which the alleged

---

[8] Counsel is reminded of his ethical duties when presenting arguments to the Court.

tort occurred." *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (citing *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992)).

Under Arizona's doctrine of *respondeat superior*, an employer may be held vicariously liable for the negligent acts of its employee acting within the course and scope of employment. *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d 304, 309 (Ariz. Ct. App. 2011), *aff'd*, 280 P.3d 599 (Ariz. 2012) (citing *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 254 (Ariz. Ct. App. 2000)). "Whether an employee's tort is within the scope of employment is generally a question of fact. It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment." *Engler*, 258 P.3d at 309–10; *see also McCloud v. State, Ariz. Dept. of Pub. Safety*, 170 P.3d 691, 700 (Ariz. Ct. App. 2007). Arizona courts follow principles of agency law for evaluating whether an employee is indeed acting within the scope of his employment. *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 602 (Ariz. 2012) (citing Restatement (Third) of the Law of Agency (2006) § 7.07 ("An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.")).

Additionally, "[c]onduct within the scope of employment may be either of the same nature as that authorized *or* incidental to that authorized." *State, Dept. of Admin. v. Schallock*, 941 P.2d 1275, 1282–83 (Ariz. 1997) (identifying three factors when considering incidental conduct: (1) time and place of conduct; (2) previous relation between master and servant; and (3) whether the master had reason to expect that such act would be done) (citing Restatement (Second) of the Law of Agency (1958) § 229). The *Schallock* court found a jury could infer the employer was aware of defendant's history of prior misconduct and thereby continued to authorize his abusive acts. *Id*. The court further explained "an employer may be held liable for an employee's acts even if the employee's

motive is not to benefit the employer [but] to advance his self interest." *Id.* at 1285. When an employee acts with mixed motives, his motives cut both ways. *Id.* at 1283 (finding an employee acted with mixed motives by running the office pursuant to his employer's interest while also fondling the file clerks pursuant to his personal desires).

Plaintiffs argue that Sloan's invasion of Plaintiffs' privacy occurred at the workplace under FDIHB's supervision while maintaining its IT systems, and FDIHB had reason to expect such misconduct would occur. (Doc. 74 at 21–22) (citing *Schallock*, 941 P.2d at 1282). Defendant contends FDIHB did not exercise control over Sloan's misconduct (Doc. 67 at 20) and Sloan's actions did not advance FDIHB's interest (Doc. 77 at 8). Defendant further attempts to distinguishes *Schallock* by arguing FDIHB was unaware of Sloan's tortious conduct and could not have been aware just by knowledge of his prior conviction. (*Id.*)

There are issues of fact as to whether Sloan's misconduct was incidental to his employment. It is undisputed Sloan used his FDIHB computer and user profile to manage and browse the recordings he took in the bathroom. (Docs. 67 at 10; 67-8 at 37, 46–47). Although the parties agree that the camera found in March 2016 was not connected to FDIHB's wi-fi system (Docs. 67 at 9), Plaintiffs also point to an incident report from December 2016 finding Sloan's subsequent recording device was indeed connected to the FDIHB's wi-fi. (Doc. 67-16 at 5). Plaintiffs point out that "only IT employees had access to FDIHB's wi-fi." (Doc. 74 at 7). IT department employees had to input a password to connect a device to FDIHB's wi-fi. (Doc. 67-16 at 5). According to FDIHB's Director of IT security, this is a type of skill Sloan acquired when he "was part of the onboarding process of when . . . a mobile device was requested to join [FDIHB's] internal network," and it was a "common IT help desk task." (Doc. 67-8 at 32). Although Sloan was acting pursuant to his personal motives, a reasonable jury could infer he was also acting while serving FDIHB by maintaining its IT systems and carrying out IT tasks he was trained to administer.

Moreover, there are issues of fact as to whether FDIHB had reason to identify Sloan

as a suspect for setting up cameras in the bathroom. *Schallock*, 941 P.2d at 1282–83. (finding the employer's awareness of the defendant's ongoing misconduct could be inferred as "authorization of his abusive acts" incidental to his employment). Defendants represent that the Directory of IT security did not have any reason to search Sloan's FDIHB computer until instructed to during the 2017 investigation. (Doc. 67 at 9). But Plaintiffs argue the FDIHB security officers who investigated the first camera in March 2016 identified the "password for the camera's memory card was 'gaslo526,' the first letters of Sloan's first and last names." (Docs. 74 at 6; 67-16 at 7). Plaintiffs further point to testimony from the Chief Human Resources Officer acknowledging the password "does look close" to Sloan's name and FDIHB username. (Docs. 74 at 6; 74-10 at 10). Like *Schallock*, we find a jury could infer FDIHB had reason to suspect Sloan was acting tortiously.

There are disputed facts as to whether Sloan's conduct was clearly outside the scope of his employment. Thus, the Court cannot hold as a matter of law that Sloan acted within the course of his employment. *Engler*, 258 P.3d at 309–10. Indeed, triable issues of fact exist as to whether Sloan invaded the Plaintiffs' privacy while "serving FDIHB by maintaining its IT systems, and utilizing his unique skills, training, and position in the IT department," as Plaintiffs argue. Viewing all factual inferences in light most favorable to plaintiff, which the Court must do on summary judgment, the Court finds Plaintiffs have met their burden in showing a jury could find he acted within the course of or incidental to his employment. *Schallock*, 941 P.2d at 1282–84. The Court denies summary judgment on Count III in Defendant's favor.

### D.    Count IV – Intentional Infliction of Emotional Distress

To bring a claim for intentional infliction of emotional distress, a plaintiff must show (1) the defendant's conduct is "extreme" and "outrageous;" (2) defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress will result from his conduct; and (3) severe emotional distress indeed occurred as a result of defendant's conduct. *See Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz.

2005) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

Under Arizona law, intentional tort liability of an employer can be established in two ways: (1) derivative liability based solely on the negligence of the employer's employee; and (2) independent liability based on the employer's independent negligence. *Ford*, 734 P.2d at 584. Here, Plaintiffs bring forth this claim on the latter theory: FDIHB's negligence independent of Sloan's misconduct. It is undisputed Plaintiffs suffered emotional distress; thus, only the first two elements are at issue. The Court finds Plaintiffs adequately show triable issues of fact exist as to both elements and summary judgment in Defendant's favor is improper.

### i.     Whether Failing to Investigate is Extreme and Outrageous Conduct

Plaintiffs argue FDIHB acted extreme and outrageous by failing to facilitate two separate investigations: (1) when it failed to investigate Sloan's lies about his criminal history and instead retained him in an IT position that afforded him the opportunity to victimize Plaintiffs; (2) and when it failed to promptly and adequately investigate the cameras found in the bathroom. (Doc. 74 at 22–23). Defendant responds that these allegations bear only on Plaintiffs' subjective outrage that "nobody prevented them from suffering harm" and are not enough to characterize FDIHB's conduct as extreme and outrageous. (Doc. 77 at 10). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980) (citing Restatement (Second) of Torts § 46, cmt. h). If so, it is then for the jury to determine whether the "conduct has been sufficiently extreme and outrageous to result in liability. Restatement (Second) of Torts § 46, cmt. h.

The Court finds *Ford v. Revlon, Inc.* instructive. There, the Arizona Supreme Court stated "[t]he failure of an employer to promptly investigate complaints of the sexual harassment is significant in making a determination to impose [independent] liability on an employer" for claims of intentional infliction of emotional distress. 734 P.2d at 585

(finding an employer's conduct was outrageous when it took nine months to confront an employee after receiving sexual harassment complaints and took another three months to discipline the harassing employee). The Ninth Circuit further clarified that independent liability only attaches when the employer "*utterly* fails to investigate or remedy the situation." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047,1059, 1052–53, 1059 (9th Cir. 2007) (finding no liability where the company took immediate action by instructing the defendant to stay away from plaintiff and to stop his misconduct, appointing a senior executive to investigate the complaint, and conducting sexual harassment training, all within a month after receiving the complaint) (emphasis added). Similarly, a defendant employer must be on sufficient notice of the alleged misconduct in order to be held liable for an utter failure to investigate. *Id.* Summary judgment is not proper when there is a dispute of fact as to whether a defendant employer failed to investigate or remedy a situation. *See Grissom v. Freeport-McMoran Morenci Inc.*, 2010 WL 3489099, at *7 (D. Ariz. Aug. 31, 2010).

Summary judgment on Count IV is not proper because triable issues of fact exist as to whether FDIHB utterly failed to carry out either investigation such that the omission could be characterized as outrageous. Although acknowledging FDIHB knew Sloan was a "convincing liar" (Doc. 67 at 8), Defendant does not set forth any facts showing FDIHB took further steps to investigate his misrepresentation of his criminal history. Plaintiffs contend FDIHB "put no remedial measures in place to supervise Sloan" (Doc. 74 at 6) and should have. Thus, a reasonable jury could find FDIHB "utterly" failed to investigate Sloan's lies, amounting to liability. *Craig*, 496 F.3d at 1059.

Moreover, the Court already found there are factual disputes over the timeline of FDIHB's investigation of the cameras found in the bathroom. *See supra* Section III(A)(ii). Defendant maintains FDIHB staff did not have an opportunity to investigate the first camera until 2017, while Plaintiffs say FDIHB staff discovered the contents of the camera the day it was found and delayed the investigation. This timeline is material to determine whether FDIHB acted promptly, the adequacy of FDIHB's investigation, and whether it

was put on sufficient notice of the danger the camera posed. Thus, a jury could find that FDIHB's handling of either investigation was extreme and outrageous.

### ii. Whether Failing to Investigate Entails Intent or Reckless Disregard

The Court must next consider whether FDIHB intended or acted with reckless disregard of a near certainty that Plaintiffs' distress would result. *See Citizen Publ'g Co.*, 115 P.3d at 110. For example, in *Ford*, the court found a defendant employer acted with reckless disregard when it failed to promptly conduct any investigation of the matter despite having actual knowledge of the situation. *Ford*, 734 P.2d at 586.

Defendant argues that FDIHB did not possess the requisite intent because none of the FDIHB employees had actual knowledge that Sloan was committing crimes when these alleged extreme and outrageous behaviors took place. (Doc. 77 at 10.)[9] But FDIHB undisputedly had actual knowledge that Sloan lied about his criminal history: a prior conviction that ultimately proved identical to the surreptitious recording he committed while employed at FDIHB. Furthermore, there is a dispute of material fact as to whether FDIHB had actual knowledge of the camera's contents, and thus the danger it posed, a year before initiating any investigation into the camera. *See supra* Section III(A)(ii). Thus, a reasonable jury could find FDIHB acted with reckless disregard when it allegedly failed to promptly conduct either of the investigations despite having actual knowledge of the situation.

Notably, the *Ford* court also held that a defendant employer acted with reckless disregard when it did not follow its own policies and guidelines for the handling of sexual harassment claims and other employee complaints. *Ford*, 734 P.2d at 586. "Once an employer proclaims a policy, the employer may not treat the policy as illusory." *Id.* Plaintiffs similarly allege that FDIHB did not follow its own policies and guidelines for conducting employee background investigations and terminating employees that

---

[9] Defendant also re-argues that Plaintiffs have failed to identify a specific FDIHB employee who caused them emotional distress by improper investigation. (Doc. 77 at 10). This Court has already rejected this argument as a misstatement of the law. *See supra* Section III(A).

misrepresent their background. The Court will reserve the issue of liability on those claims for the jury, but if ultimately found liable, this too could be used as evidence of FDIHB's intended or recklessly disregarded the near certainty that Plaintiffs would suffer emotional harm. Accordingly, the Court will not grant the Defendant summary judgment on Count IV.

**IV.    Conclusion**

The Court denies Defendant's Motion for Summary Judgment (Doc. 67). However, the Court finds the discretionary function exceptions applies to bar Defendant from liability under some, but not all, of Plaintiffs' theories under Count II for negligent hiring, supervision, and retention. The Court does not have subject matter jurisdiction to consider Plaintiffs' assertions that FDIHB acted negligently when it (1) retained Sloan after discovering his criminal history and (2) employed Sloan in an IT position despite his prior conviction. Such actions are shielded by the discretionary function exception under the FTCA, thereby conferring immunity onto Defendant. But the Court may consider Plaintiffs' assertions that FDIHB acted negligently when it (1) failed to review the results of Sloan's background report until three years after his hire date; (2) failed to implement a procedure for reviewing background reports; and (3) failed to terminate Sloan after he provided false information about his background. The discretionary function exception does not apply to bar the latter three assertions under Count II.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 67) is **denied**.

Dated this 30th day of September, 2022.

Honorable Diane J. Humetewa
United States District Judge